No. 46,700

THE STATE OF KANSAS, *Appellee*, v. JOHN EDGAR KRESS, *Appellant*.

(502 P. 2d 827)

Opinion filed November 4, 1972.

*Edward J. White*, of Kansas City, argued the cause, and *George A. Groneman*, also of Kansas City, was on the brief for the appellant.

*Nick A. Tomasic*, chief deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *Frank D. Menghini*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by:

OWSLEY, J.: This is a direct criminal appeal from a jury verdict of "guilty to the charge of theft of an automobile" as defined by K. S. A. 1971 Supp. 21-3701. The car was a 1967 Pontiac two-door, black with gold decals on both doors. The defendant was sentenced under the Habitual Criminal Act pursuant to K. S. A. 1971 Supp. 21-4504, to a term of from six to twenty years. The court overruled appellant's motion for a new trial and the defendant appeals.

On or about the 12th day of March, 1971, a car was stolen from the lot of the Board of Public Utilities of Kansas City, Kansas. The car belonged to the Board of Public Utilities and for more than two years had been driven by Mr. Sylvester Byrd. Prior to the incident involved in this case, Mr. Byrd was issued another car and the Pontiac was used as a "loaner."

On April 4, 1971, Sylvester Byrd and his wife and children were washing their car at a coinmatic car wash. As the Byrd family prepared to leave they noticed a man washing a car similar to the one Mr. Byrd had driven for two years. Although the decal on the door of the car had been painted over with black paint the Byrds were able to make identification of the stolen car. Both Mr. and Mrs. Byrd observed the man washing the automobile. According to Mr. Byrd, after leaving the car wash, he made a U-turn and stopped in front of the car wash on the opposite side of the street—a distance of at least thirty feet. He observed the man for another sixty seconds to "reassure" himself that the man was not an employee of the Board of Public Utilities. The Byrds then called the police. When the Byrds returned to the car wash the car and the man were gone. While waiting for the police the car and the man drove by in front of the car wash and both Mr. and Mrs. Byrd again observed him. Mrs. Byrd then proceeded to follow the car while Mr. Byrd waited for the police. After driving a few blocks Mrs. Byrd saw the car parked in a liquor store lot and observed a man standing beside the car. She then returned to the car wash. Two police officers arrived at the car wash about this time and met Mrs. Byrd somewhere between the car wash and where the liquor store was located. The officers then proceeded to the liquor store where they observed the automobile which the police dispatcher informed them had been stolen, and a man standing in a telephone booth nearby. The officers approached the telephone booth and asked the man if the car was his and the man said, no, it was a friend of his. At that time defendant was placed under arrest and advised of his rights. The Byrds were either brought to the scene by the back up unit at the request of the arresting officers or proceeded there of their own volition. They each observed the defendant who was sitting in the back seat of the police car.

At the trial, Mr. and Mrs. Byrd testified that the man they saw washing and driving the car was the same man they observed in the back seat of the police car. They also identified the defendant as the man they had observed on the day of the incident.

The defendant presents and argues three specifications of error. We will consider the specifications of error as they are designated in the defendant's brief.

I.

Defendant asserts the courtroom identification of the defendant

based upon a custodial displaying of the defendant alone to the identifying witnesses without the assistance of counsel is a violation of his rights under the United States Constitution, Amendment Six, Kansas State Constitution Bill of Rights, Section Ten, and Kansas Statutes Annotated 62-1304.

Mr. and Mrs. Byrd testified that the man sitting in the back seat of the police car was the same man they saw washing and driving the stolen car.

Defendant claims the admission of this testimony violated his constitutional rights as determined in *United States v. Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; and *Gilbert v. California,* 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. These cases point out that an accused person is entitled to counsel and that counsel should have an opportunity to be present at all pretrial identifications.

Here, we have an on-the-scene identification of the only suspect within ten minutes of the first sighting of the suspect and within two or three minutes of the arrest. The witnesses were not solicited by the police. When presented with on-the-scene identifications and prompt confrontations the courts have drawn a distinction from the formal lineup identification made after indictment as in *Wade* and *Gilbert.*

In *Russell v. United States,* 408 F. 2d 1280 (D. C. Cir. 1969), cert. den. 395 U. S. 928, 23 L. Ed. 2d 245, 89 S. Ct. 1786, the court said:

". . . The confrontations disapproved in these cases [*Wade* and *Gilbert*] were post-indictment lineups. Similarly, though it spoke in broad terms, the Court was evidently focusing primarily on the routine lineup and show-up procedures employed by the police to obtain evidence for use at trial. The Court was concerned both to enhance the fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find 'no substantial countervailing policy considerations . . . against the requirement of the presence of counsel.'

"The present case, however, involves an immediate on-the-scene confrontation at 5 o'clock in the morning when there would necessarily be a long delay in summoning appellant's counsel, or a substitute counsel, to observe a formal lineup. Such delay may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement." (pp. 1283, 1284.)

In *Bates v. United States,* 405 F. 2d 1104 (D. C. Cir. 1968), the court justified on-the-scene identification in the following language:

". . . the police action in returning the suspect to the vicinity of the

crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. . . ." (p. 1106.)

The *Russell* and *Bates* cases were the basis for our decision in *State v. Meeks,* 205 Kan. 261, 469 P. 2d 302.

In *Meeks* the defendant was arrested as a suspect and immediately upon his apprehension, approximately four hours after the offense, he was returned to the scene and identified by the victim. We held that the accused's constitutional right to counsel was not infringed and said:

"Here the time between the crime and the arrest was short; the finger of suspicion pointed to the appellant, but he denied the crime. He may or may not have been the robber. The only eye witness who could identify the appellant for sure was the victim, and time was important. Any delay in identifying the appellant would mean that, had he not been the robber, the real culprit would be at large with the trail growing cold while the appellant remained in custody. Under the circumstances we find the on-the-scene identification of the appellant did not infringe the constitutional counsel requirement." (p. 266.)

Here, the confrontation was more prompt than in *Meeks* and the identification was almost simultaneous with the arrest of the defendant. It follows that we are controlled by *Meeks* and we hold that the identification of the defendant did not infringe on his constitutional rights.

## II.

Defendant asserts improper admission of "prior conviction" evidence for auto theft resulted in undue prejudice and in ultimate conviction of the defendant.

After argument outside the hearing of the jury the state offered in evidence the following:

"A certified copy of the record of the United States Department of Justice, Bureau of Prisons, U. S. Penitentiary, Leavenworth, Kansas, showing a conviction, a plea of guilty to auto theft or the Dyer Act in Federal Court against the present defendant on April 5, 1968."

K. S. A. 60-455 states:

"Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove

some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The question for review is whether under the circumstances in this case the admission of the record of his prior conviction was proper under the provisions of K. S. A. 60-455. It is extremely difficult to distinguish the statutory elements which permit the introduction of prior convictions. It is likewise difficult to determine which of these several elements is applicable to the facts to which they are applied. Whenever it appears that conviction of a defendant charged with a crime has been substantially influenced by the introduction in evidence of prior convictions close scrutiny should be made as to the proper application of the statute.

In this case the undisputed evidence established that defendant was in possession of the stolen vehicle without the owner's consent or authority. When asked by the police officer if he owned the car, defendant stated it belonged to a friend. The charge of theft under K. S. A. 1971 Supp. 21-3701 requires proof that the defendant intended to deprive the owner permanently of the use and benefit of the property. Defendant's denial of ownership at the time of his arrest raised an issue as to his state of mind or intention in exerting unauthorized control over the property. Hence, evidence of a previous conviction of auto theft was relevant to show defendant's intent to deprive the owner permanently of the use of his property. We conclude that the court did not err in admitting such evidence. The court gave a limiting instruction, the propriety of which was not specified as error; therefore, it is not before us on appeal.

### III.

Defendant asserts the admission of testimony of incriminating statements made by the defendant before he was advised of his rights is a violation of the United States Constitution Fifth Amendment right against self-incrimination.

When the police officer arrived at the place where the stolen car was located the defendant was in a phone booth next to the car. The officer asked the defendant if the car was his and he said no, it was his friend's car. The defendant was then placed under arrest and was advised of his constitutional rights. Based on these facts the defendant contends his statement was inadmissible because of the failure of the officer to give the warning required under *Miranda v. Arizona*, 384 U. S. 436, 16. L. Ed. 2d 694, 86 S. Ct. 1602. In *Miranda* it was said:

"The prosecution may not use statements, whether exculpatory or inculpatory, stemming from questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way, unless it demonstrates the use of procedural safeguards effective to secure the Fifth Amendment's privilege against self-incrimination.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

(d) In the absence of other effective measures the following procedures to safeguard the Fifth Amendment privilege must be observed: The person in custody must, prior to interrogation, be clearly informed that he has the right to remain silent, and that anything he says will be used against him in court; he must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation, and that, if he is indigent, a lawyer will be appointed to represent him." (Syl. ¶ 1.)

The state points out that the *Miranda* decision was not intended to hamper the traditional functions of police officers in investigating crime. General on-the-scene questioning as to facts surrounding the crime or other general questioning of citizens in the fact-finding process is not affected by that decision. In support of this position the state also quotes from *Miranda* as follows:

".  .  . By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. .  .  ." (p. 444.)

In *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, the court said:

".  .  . We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate. .  .  ." (p. 492.)

This was clearly an on-the-scene investigation and at the time the questioned testimony was elicited from the defendant the proceeding had not reached the accusatory stage. We see no error in the admission of this evidence.

The judgment is affirmed.