No. 75,956

STATE OF KANSAS, *Appellee,* v. GREGORY J. MITCHELL, *Appellant.*

(939 P.2d 879)

Opinion filed May 30, 1997.

*Thomas Jacquinot*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant, Gregory J. Mitchell, was convicted of felony murder, three counts of felony auto theft, two counts of misdemeanor criminal deprivation of property, and two misdemeanor traffic infractions (speeding and running a red light). The district judge imposed a life sentence on the felony-murder charge, an upward durational departure sentence of 44 months on the three felony theft charges, and an additional consecutive sentence of 24 months on the two misdemeanor charges. Mitchell appeals his convictions for felony auto theft and felony murder, claiming that (1) the evidence was insufficient to show an intent to perma-

nently deprive the theft victims of their vehicles; (2) evidence of prior crimes was improperly admitted; (3) the trial court erroneously gave a general intent instruction; and (4) the departure sentence was not supported by substantial and compelling evidence.

On December 29, 1994, James Pace was killed when his car was struck by a stolen Chevrolet pickup truck Mitchell drove through a red light. The Chevrolet pickup was the fifth vehicle stolen by Mitchell that month. On December 8, 1994, Mitchell stole a 1988 Honda Prelude from a laundromat in Sedgwick County. A Kansas trooper discovered the car the next day parked along an interstate highway in McPherson County. Mitchell, who was asleep in the car, was arrested, taken to jail, and released later that day. After his release, Mitchell walked to a gas station and took an Oldsmobile Royale belonging to the owners of the gas station. He drove the car to Wichita, where it was recovered a few days later.

On December 15, 1994, Mitchell took a Chevrolet van in Sedgwick County. Mitchell was arrested on December 28, 1994, after he was found sleeping in the van in Kingman County. After his release from the Kingman County jail, Mitchell took a Ford truck and drove it to Wichita. The next day, Mitchell drove the Ford truck to a construction site in Sedgwick County, abandoned the truck, and took a Chevrolet pickup truck. When the pickup truck's owners observed Mitchell driving away with their truck, they pursued him in another vehicle. The speed limit in the area was 55 mph. During the chase, Mitchell drove through a red light at a speed of about 75 mph and collided with Pace's vehicle. One observer testified Mitchell approached the intersection at a high rate of speed, started to slow down, then accelerated into the intersection before he smashed into Pace's car. Pace was killed instantly.

Mitchell was charged with five counts of felony auto theft, felony murder, and two misdemeanor counts. At trial, Mitchell claimed he had no intent to permanently deprive the owners of their vehicles. Mitchell was convicted of felony theft of the Honda Prelude and the Chevrolet van, as well as criminal deprivation of property of the Oldsmobile Royale and Ford truck, and two misdemeanor traffic offenses. He was also convicted of felony theft of the Chev-

rolet pickup truck which provided the underlying felony for his conviction for felony murder.

## I. Insufficient Evidence

Mitchell argues that there was insufficient evidence that he intended to permanently deprive the owners of their vehicles. If he is correct as to the theft of the Chevrolet pickup truck, his felony-murder conviction cannot stand since that conviction is the underlying crime for the felony murder.

When the sufficiency of the evidence, if an appellate court is convinced, after review of all the evidence, viewed in the light most favorable to the prosecution, that a jury could have found the defendant guilty without a reasonable doubt, the convictions should be affirmed. *Cf. State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990). Felony theft is a specific intent crime. Specific intent is a question of fact for the jury which may be established by acts, circumstances, and inferences and need not be shown by direct proof. *State v. Dubish*, 234 Kan. 708, 717, 675 P.2d 877 (1984).

K.S.A. 21-3110(6)(a) provides in part that to "deprive permanently" means to:

"Take from the owner the possession, use or benefit of his or her property, without an intent to restore the same."

As to the three felony theft convictions, evidence at trial revealed: The 1988 Honda was recovered with Mitchell's laundry inside. The brakes were "shaky," indicating to the owner that it had been driven hard. There was some discoloration on the side of the car. Prior to the police recovering the vehicle, no one called the owner to inform her where her car was or that it would be returned to her. Mitchell testified he took the Honda because he wanted to "use it." In addition, he testified that he worked as "security" for a drug dealer. With regard to all the vehicles he took, Mitchell stated that he used the vehicles for transportation and intended to "keep them till I got caught with them."

The Chevrolet van was taken from Wichita and found 10 days later near Kingman with Mitchell asleep inside. Mitchell initially lied to police, telling them he had discovered the van while hitch-

hiking. When the van was recovered, the inside of the vehicle was damaged, part of a motor housing had been torn off, a stereo equalizer and the spare tire were gone, inside lights were damaged, and the steering column had been punched. Again, the owner had not received communication from Mitchell about the whereabouts of the van or when it would be returned.

In an interview at the hospital with a detective after the fatal accident in which Pace was killed, Mitchell said he had been trying to go to Hutchinson in the Chevrolet van. He said he had obtained the vehicle from a friend named Lloyd who worked at the construction site and whose last name, address, or phone number he could not provide. He also told the officer he obtained the Ford truck from his friend Lloyd. He stated he was going to keep the Ford truck until Lloyd wanted it back. After telling the officer that Lloyd had also given him the keys to the Chevrolet pickup truck, Mitchell finally admitted Lloyd did not work at the construction site, the pickup truck was not Lloyd's, and Mitchell had no permission to take it.

Mitchell also bragged to the detective that driving the stolen vehicles without being caught was easy. He stated he never thought about returning the vehicles. He also said he did not think about keeping them or returning them "one way or the other." He admitted to the detective that he used all five of the vehicles he took as if they were his.

This court discussed the intent to permanently deprive an owner of an automobile in *State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985). In *Keeler*, the defendant was convicted of felony theft of an automobile. The evidence indicated that the defendant attempted to hire a taxi to take him to a girlfriend's house and that, when he could not obtain a taxi, he took the victim's car. The car was found a week later approximately two blocks from the defendant's residence. The defendant argued that the evidence did not imply that he intended to permanently deprive the victim of the automobile but showed that he merely borrowed the car to visit his girlfriend, then drove it to his home where he abandoned the car. The *Keeler* court observed that the crime of theft as defined in K.S.A. 1984 Supp. 21-3701 was a specific intent crime. In af-

firming the conviction, the *Keeler* court pointed out that there was no evidence to indicate the defendant intended to return the automobile at the time it was appropriated. The court also observed that during the several days before the vehicle was recovered, defendant made no effort to return it or to alert the owners as to its whereabouts.

In *State v. Warren*, 221 Kan. 10, 557 P.2d 1248 (1976), the defendant was convicted of felony theft of a motor vehicle. Warren argued the verdict was contrary to the evidence in that the evidence did not show that he had intended to permanently deprive the owner of the use or benefit of the property. The *Warren* court held that the contemporaneous disappearance of the defendant and the motor vehicle, when coupled with evidence that defendant was later seen standing by the vehicle at a motel, provided a strong inference that the defendant had driven the vehicle and was sufficient to sustain his conviction of felony theft. 221 Kan. at 12.

Here, the evidence, Mitchell's statements to police that if he drove the stolen vehicles carefully, he would not be caught, and his statement that he intended to use the vehicles until he got caught support the conclusion of an intent to permanently deprive the owners of their property. In addition, Mitchell admitted to using the vehicles as his own. Further, as the State points out, damage to the Honda and the Chevrolet van (by removing the stereo, spare tire, and punching the steering column) also supports an inference of intent to deprive. The evidence that Mitchell intended to permanently deprive the owners of their vehicles, or take the vehicles without an intent to restore them to their owners, is sufficient for the jury to have found him guilty of the felony theft charges.

Mitchell also argues that the State's theory that he lacked intent to return the vehicles required him to prove to the jury that he was innocent. We disagree with this assertion.

The State is not required to show intent by direct proof. Taking someone's car without permission and without evidence of an affirmative intent to return it are circumstances which reasonably give rise to inferences of an intent to permanently deprive and do not require the accused to prove he or she is innocent. See *State*

*v. Keeler*, 238 Kan. at 359. The jury was instructed it was required to find that Mitchell intended to deprive the owners permanently of the use or benefit of their property. The jury was also instructed on the lesser included offense of temporary deprivation of the vehicles. We find that the jury was properly instructed and there was sufficient evidence of Mitchell's intent to permanently deprive the owners of their property to support his conviction.

## II. K.S.A. 60-455 Evidence

Mitchell next argues that the trial court erred in allowing the State to introduce evidence of a prior conviction of automobile theft. He asserts that the prejudice caused by admission of the prior conviction outweighed its probative value. K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

At a hearing prior to trial, the State argued Mitchell's prior conviction for automobile theft should be introduced into evidence to show his intent to permanently deprive. The State pointed out that Mitchell had told police he had keys from his friend Lloyd to drive the Chevrolet pickup truck. Based on these facts, the State contended Mitchell's intent was a material, disputed issue. Defense counsel argued to the judge that the probative value of the evidence would be outweighed by prejudice to Mitchell because by introducing evidence that Mitchell had a prior conviction for felony theft, the State would be attempting to bootstrap the intent to permanently deprive using the prior conviction. In granting the State's motion to admit the prior conviction, the district judge found that Mitchell's intent in taking the automobiles was materially at issue, but he made no finding as to whether the prejudice to Mitchell was outweighed by the probative effect of the evidence.

Evidence that a defendant committed a prior crime is admissible when relevant to show intent or plan in the crime charged. K.S.A.

60-455. There are three requirements which must be satisfied when evidence of a prior crime is admitted under K.S.A. 60-455. The district court must find that (1) the evidence is relevant to prove one of the facts specified in the statute; (2) the fact is a disputed, material fact; and (3) probative value of the evidence outweighs its potential prejudice. *State v. Nunn*, 244 Kan. 207, 211, 768 P.2d 268 (1989). Mitchell argues that the other crime evidence fails to survive the third prong of the test and that it was an abuse of discretion for the district court to admit evidence of his prior crime to prove intent or plan. If the requirements for admission of evidence of prior crimes pursuant to K.S.A. 60-455 are met, the scope of appellate review is limited to whether the trial court abused its discretion. *State v. Blackmore*, 249 Kan. 668, Syl. ¶ 2, 822 P.2d 49 (1991).

A similar issue was addressed in *State v. Kress*, 210 Kan. 522, 502 P.2d 827 (1972). In *Kress*, the defendant was apprehended with a stolen car. When police officers asked Kress if the car was his, he answered that it belonged to a friend. Based on this statement, evidence of Kress' prior conviction for auto theft was admitted under K.S.A. 60-455. The trial court instructed the jury that it could consider the other crime evidence solely for the purpose of proving intent. On appeal, Kress argued the admission of his prior conviction resulted in undue prejudice to him. The *Kress* court reasoned:

"The charge of theft under K.S.A. 1971 Supp. 21-3701 requires proof that the defendant intended to deprive the owner permanently of the use and benefit of the property. Defendant's denial of ownership at the time of his arrest raised an issue as to his state of mind or intention in exerting unauthorized control over the property. Hence, evidence of a previous conviction of auto theft was relevant to show defendant's intent to deprive the owner permanently of the use of his property." 210 Kan. at 526.

Here, the issue of intent was the focus of the State's contention with regard to each of the theft counts. The prior conviction was probative of Mitchell's intent and properly admitted pursuant to statute. It was also prejudicial in the sense that it constituted evidence as to Mitchell's intent or plan in taking the five vehicles. As in *Kress*, the trial court here instructed the jury to consider the

prior crime evidence solely for the purpose of proving intent. Although the trial court failed to make a specific finding regarding the probative value of the evidence, under the facts, the trial court did not abuse its discretion in admitting into evidence Mitchell's prior conviction for felony theft of an automobile.

## III. General Intent Instruction

The distinction between a general intent crime and a crime of specific intent is whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime charged identifies or requires a further particular intent which must accompany the prohibited acts. *State v. Sterling*, 235 Kan. 526, Syl. ¶ 1, 680 P.2d 301 (1984). The jury was instructed on general criminal intent following PIK Crim. 3d 54.01-A:

"In order for a defendant to be guilty of the crime charged, the State must prove beyond a reasonable doubt that his/her conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent, or lack of intent, is to be determined or inferred from all the evidence in the case."

The defendant made no objection to this instruction. No party may assign as error the giving of an instruction unless he or she objects before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995); *State v. Crawford*, 255 Kan. 47, Syl. ¶ 5, 872 P.2d 293 (1994).

Mitchell argues the instruction was clearly erroneous because all the theft crimes charged in the complaint required a specific intent; therefore, the only issue for the jury to determine was whether he possessed the specific intent to permanently deprive the victims of their vehicles. Mitchell points out that the Notes on Use to the instruction states that it is not recommended for common use and should be given where the crime requires only a general criminal intent and the state of mind of the defendant is a substantial issue.

See Notes on Use, PIK Crim. 3d 54.01-A. In addition, Mitchell also argues that the trial court should have instructed the jury that a person ordinarily intends all of the usual consequences of his voluntary acts. See PIK Crim. 3d 54.01.

To support this argument, Mitchell relies on *State v. Plunkett*, 261 Kan. 1024, 934 P.2d 113 (1997). In *Plunkett*, the defendant was charged with two counts of aggravated criminal sodomy and one count of rape. One of the issues Plunkett raised on appeal was the district court's failure to give the general criminal intent instruction, PIK Crim. 3d 54.01-A. Since there was no objection to the failure to give the instruction, the clearly erroneous standard applied. The *Plunkett* court found that giving the general intent instruction would have been appropriate because rape is a general intent crime. However, since Plunkett's state of mind was not an issue (he conceded his conduct was purposeful and argued his victims consented), the failure to give the general intent instruction was not clear error. 261 Kan. at 1032. Based upon these determinations, the holding of *Plunkett* does not provide authority for Mitchell's argument in this case.

In *State v. Woods*, 222 Kan. 179, 184-86, 563 P.2d 1061 (1977), an instruction on presumption of intent, following PIK Crim. 54.01, was given to the jury. On appeal, the defendant argued the trial court erred because that instruction confused general intent with a specific intent instruction relating to the elements of the aggravated battery charge. The *Woods* court noted the jury was given a general intent instruction, an instruction on the specific intent required for crime charged, and an instruction on the burden of the State to prove the defendant's guilt. The *Woods* court found that when taken as a whole, the instructions were correct statements of the law. 222 Kan. at 185-86.

In *State v. Cheeks*, 253 Kan. 93, 853 P.2d 655 (1993), the defendant requested the general intent instruction, PIK Crim. 2d 54.01-A (1988 Supp.), identical to the instruction at issue here. The trial court refused to give that instruction because the crime charged required specific intent, and another instruction was being given on intent. On appeal, the *Cheeks* court looked at the instructions as a whole, and found that the substance of the requested

instruction was present in other instructions given by the trial court. 253 Kan. at 99.

Here, the instruction given was also appropriate under the facts of this case. The first paragraph of the instruction stated: "In order for a defendant to be guilty of the crime charged, the State must prove beyond a reasonable doubt that his/her conduct was intentional. Intentional means willful and purposeful and not accidental." This paragraph is taken from K.S.A. 21-3201(a) and (b).

The second paragraph of the instruction, "Intent, or lack of intent, is to be determined or inferred from all the evidence in the case," is taken directly from PIK Crim. 3d 54.01-A. This is another way of stating the principle that "criminal intent may be shown by proof of the acts and conduct of the accused, and inferences reasonably drawn therefrom." *State v. Lassley*, 218 Kan. 758, 762-63, 545 P.2d 383 (1976).

More important, the jury was also instructed on the specific intent necessary for a conviction of theft. The jury was instructed that it was required to find all elements of the crime required by law, including intent, and that the State must prove that the defendant took the automobiles with the intent of permanently depriving their owners of possession.

Jury instructions are to be considered together and read as a whole, without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 4, 874 P.2d 623 (1994). Here, the instruction's general statement of law does not conflict with the requirement of specific intent the jury was charged it had to find to convict Mitchell of theft. Applying the clearly erroneous standard, even if it would have had been better for the court not to have given the instruction, the giving of the instruction did not affect the outcome of the trial.

## IV. Departure Sentence

"Criminal history score" means the summation of the convictions described as criminal history that place an offender in one of

the criminal history score categories listed on the horizontal axis of the sentencing guidelines grid for nondrug crimes and the sentencing guidelines grid for drug crimes. K.S.A. 21-4703(d). The sentencing range for nondrug offenses are ranked from A to I. Mitchell's criminal history was determined to be "E." The court imposed a life sentence for the felony murder and departed durationally on two of the theft counts, imposing consecutive sentences of 22, 14, and 8 months. Mitchell argues that the departure sentence imposed was not supported by substantial and compelling evidence.

K.S.A. 21-4719(c) provides:

"When a sentencing judge imposes a prison term as a dispositional departure:

. . . .

"(2) the term of imprisonment shall not exceed the maximum duration of the presumptive imprisonment term listed within the sentencing grid. Any sentence inconsistent with the provisions of this section shall constitute an additional departure and shall require substantial and compelling reasons independent of the reasons given for the dispositional departure."

K.S.A. 21-4716 governs imposition of departure sentences. In pertinent part, that statute provides:

"(a) The sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines . . . unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

K.S.A. 21-4721 provides for appellate review of departure sentences:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:
(1) Are supported by evidence in the record; and
(2) constitute substantial and compelling reasons for departure.

. . . .

"(f) The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand the case to the trial court for resentencing."

A claim that the departure factors relied upon by the court are not substantial and compelling presents a question of law. *State v. Gideon*, 257 Kan. 591, Syl. ¶ 20, 894 P.2d 850 (1995). The term "substantial" means something that is real, not imagined, something with substance and not ephemeral. The term "compelling" implies that a court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary. *State v. Rhoads*, 20 Kan. App. 2d 790, 799, 892 P.2d 918 (1995). "Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *State v. Grady*, 258 Kan. 72, 79, 900 P.2d 227 (1995).

The court's comments at the time of sentencing govern as to the reasons for departure. *State v. Gideon*, 257 Kan. 591, Syl. ¶ 21. At the sentencing hearing, following a motion by the State for departure and the introduction of evidence in support of the motion, the district court stated:

"I'll find that *State v. Trimble* and *State v. Rhoads* both authorize the court to depart. Authorize is the wrong word. *Trimble* and *Rhoads* both stand for the proposition that it can be a substantial and compelling reason for departure that while on parole a criminal defendant commits additional crimes.

"In this case, there's no dispute that Mr. Mitchell committed four additional felonies and two additional misdemeanors while on parole. I find that to be the basis for a departure.

"I cannot depart based upon the tragic results of Mr. Mitchell's criminal behavior. I cannot depart on that basis, because Mr. Mitchell is going to be receiving a life sentence for that behavior.

"And if he had not been convicted or had not been charged with the death that resulted from his criminal behavior, then I could depart on that basis. But it's my belief that, as a matter of law, the State of Kansas will not recognize as a basis for departure results of criminal behavior when that criminal behavior results in an additional conviction. And that's where we are there.

"I do, however, find based upon the testimony this afternoon that Mr. Mitchell violated the terms of his parole on three separate occasions—on at least three separate occasions between August and November of 1994. I find as a matter of law that is behavior which is both substantial and compelling as a basis for departure.

"I further find as a matter of fact that Mr. Mitchell lied to this court on November the 30th of 1995, when he told this court he was not on parole at the time of his criminal behavior took place, that he lied in the affidavit that was presented to the court this afternoon, and that he lied when he addressed the court this

afternoon. [The affidavit stated Mitchell believed he had been discharged from parole on or before December 15, 1994, because no parole holds were placed on him when he was arrested in the course of committing his several crimes. At the sentencing hearing, the court heard evidence from a detention officer that he had shown the defendant and had the defendant sign papers indicating the defendant was on parole until January 28, 1995. The defendant's parole officer also testified regarding his contacts and communications with the defendant. This evidence supports the trial court's factual determination the defendant had lied.]

"I find as a matter of law that any one of those lies is a sufficient legal basis for departure, and that it shows Mr. Mitchell's attitude, it shows that he's not a person who is subject to being rehabilitated, it shows that he's a person who's in need of being incarcerated for the protection of society. And I will depart on that basis.

"I will depart on the basis of Mr. Mitchell's criminal behavior or, I should say criminal—it's not a crime—his irresponsible behavior, his attitude towards parole, his behavior while on parole, in being an absconder on two occasions and should have been an absconder on a third occasion.

"I'll depart on the basis of the commission of crimes while Mr. Mitchell was on parole. And I find as a matter of fact—I find as a matter of fact that Mr. Mitchell was on parole until January 28th of 1995. I find all of these crimes were committed while he was on parole."

Mitchell concedes there is a factual basis for the departure. However, he argues the facts do not provide a substantial and compelling reason for departure. Here, the district court stated it was departing on the basis of Mitchell's attitude toward parole, his behavior on parole in absconding on several occasions, and his commission of crimes while on parole. Committing crimes while on supervised parole has been held to be a substantial and compelling reason to justify a departure. *State v. Trimble*, 21 Kan. App. 2d 32, 38, 894 P.2d 920 (1995). The court did not err in departing on that basis.

The court's additional basis for departure, that Mitchell had lied, also constitutes a substantial and compelling basis. See *State v. Whitaker*, 260 Kan. 85, Syl. ¶ 1, 917 P.2d 859 (1996). See also *Andrews v. State*, 11 Kan. App. 2d 322, 720 P.2d 227 (1986) (misrepresentation to court sufficient basis for revocation of probation). Here, the district court found the defendant had lied in statements to the court. Although Mitchell did not lie under oath, he presented an affidavit to the district court in which the court found he had lied. The court found Mitchell's lies demonstrated he was not amenable to rehabilitation.

We find that the departure sentence was supported by the evidence and made on the basis of substantial and compelling reasons.

Affirmed.