NOT DESIGNATED FOR PUBLICATION

No. 128,299

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYLER J. SAWYER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE BROWN, judge. Oral argument held May 12, 2026. Opinion filed June 26, 2026. Affirmed.

*Merideth J. Hogan*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM:  A jury found Tyler J. Sawyer guilty of burglary, misdemeanor theft, misdemeanor criminal damage to property, and misdemeanor violation of a protective order. Sawyer now timely appeals his convictions and sentences, claiming he did not receive a fair trial. Sawyer argues the district court abused its discretion in denying his motions for a mistrial and for a new trial, and for allowing the State to endorse a new witness after the trial began. Sawyer also asserts cumulative error deprived him of a fair trial. Finding no error by the district court, there can be no cumulative error; therefore, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On October 2, 2023, the district court granted Sawyer's mother (Mother) a temporary order of protection from abuse (PFA) against Sawyer. The matter was scheduled for a hearing on October 19, 2023.

On October 7, 2023, Sawyer was arrested for trespassing, resisting arrest, criminal damage to property, and violation of a PFA order in which Mother was the victim. Wichita Police Officer Darrell Johnson served Sawyer with the PFA order on October 7, but Sawyer claimed he had no knowledge of the PFA.

The morning of October 8, 2023, Mother saw movement on a home security camera in her living room. The camera showed Sawyer walking upstairs from the basement while eating and drinking. Mother reported she began to panic because Sawyer was in her home. Meanwhile, Wichita Police Officer Tiffany Vo-Zimmerman went to inspect Mother's residence and found a broken window with the screen removed. Vo-Zimmerman knocked on the door and heard movement inside, but no one answered. Vo-Zimmerman called Mother, who was staying with her daughter out of fear Sawyer would return to her residence when he was released from jail. Mother explained to Vo-Zimmerman the damage to the window was new, and she had not given Sawyer permission to break the window and enter her home and eat her food. Mother told Vo-Zimmerman Sawyer was "'psychotic scary,'" yells and screams at her, has battered her, threatened to burn the house down, and made comments about killing someone.

Mother returned to her residence and allowed officers to enter; they found Sawyer sleeping on the couch. Sawyer was taken into custody. Wichita Police Officer Steward Blurton verified Sawyer had three separate no-contact orders against him currently set for trial. On October 11, 2023, the State charged Sawyer with burglary, misdemeanor theft,

misdemeanor criminal damage to property, and misdemeanor violation of a protective order. The district court issued a protective order for Mother against Sawyer.

Sawyer filed a pro se motion to dismiss claiming, among other things: (1) He was never served the October 2, 2023 protective order and had no knowledge of the order; (2) he had no idea about the broken window and believed his mother was setting him up; and (3) the police fractured his foot the day before the alleged break in—contesting that his foot was injured from breaking and crawling through Mother's window.

The State filed, and the district court granted, a motion to admit evidence under K.S.A. 60-455, including evidence of prior domestic violence cases against Mother and the temporary PFA order at the time of the arrest. The case proceeded to jury trial. The State called five witnesses—Mother, Johnson, Vo-Zimmerman, and two jail personnel.

Relevant to this appeal, Vo-Zimmerman testified she was dispatched to Mother's address on October 7, 2023, because Sawyer was in the residence and was not supposed to be. Before Vo-Zimmerman entered Mother's residence, Sawyer was apprehended nearby. Sawyer was placed in custody, and law enforcement called paramedics because they believed Sawyer had ingested drugs. Vo-Zimmerman obtained a copy of the PFA order to deliver to Johnson to serve on Sawyer.

Johnson testified he had contacted Sawyer at the hospital on October 7, 2023, and later transported Sawyer from the hospital to the jail. Johnson explained he verified Mother had a PFA order against Sawyer, which still needed to be served. Johnson identified the return of service of the PFA order. Sawyer attacked the document's credibility as Johnson did not sign the document where he normally does and another officer typed his signature on the document a few days later. Johnson acknowledged discrepancies on the return of service but was adamant he personally served Sawyer with the PFA order.

Johnson admitted he could not recall if he handed the return of service directly to Sawyer or put it in Sawyer's property bag that was given back to Sawyer upon his release from jail. Regardless, Johnson stated he would have explained the PFA order to Sawyer and told Sawyer it was his responsibility to read it over. There was also a discrepancy as to the time when the return of service and PFA order were served on Sawyer. Johnson's report noted he spoke with Sawyer about the protective order, and Sawyer acknowledged he understood he was to have no contact with his mother.

During Sawyer's jury trial, it was discovered the State had not turned over Johnson's bodycam footage to the defense. In fact, in his opening remarks, Sawyer proclaimed, "There will be no police body camera footage corroborating that he was served with a PFA." However, it became apparent on cross-examination there was, in fact, bodycam footage. The district court excused the jury from the court room to discuss several objections outside the jury's presence. During that time, Sawyer moved for a mistrial as he never received any bodycam footage from Johnson reflecting Sawyer was served. The district court noted it was unclear whether the evidence at issue existed and, if so, what it showed. The district court ordered the State to find out overnight whether Johnson had bodycam footage of the October 7, 2023 incident. The trial proceeded for the remainder of the day.

The following morning, before the jury entered the courtroom, the State acknowledged there was bodycam footage from Johnson that was not turned over to Sawyer. The State explained:

> "[T]he reason those were not downloaded or received as discovery is those were introduced as part of the 60-455 motion. They related to the 10-7 incident, the arrest the day before. I was told to introduce that evidence, I mean, for lack of a better word, as delicately as possible. I did so by the return of service and calling the officer that did it. It's not new evidence. It's not exculpatory evidence. And I didn't download the video . . .

4

from any of the 60-455 cases. I did establish it, as you've seen, so . . . that would be where I'm going in my argument."

Sawyer's counsel responded, noting she had not seen the full video but, from the short clip she did see, the video "purport[ed] to be Officer Johnson reading a PFA to [Sawyer]." Counsel also pointed out the video shows Sawyer had just been released from the hospital after ingesting drugs and was not responding to Johnson. Sawyer's counsel asked for a mistrial, explaining:

"I would presume that in this footage there is footage of how Mr. Sawyer is acting. Whether he's in the right frame of mind to understand what is going on around him, we have no idea to that. Had we had this footage, we could have assessed if we needed to get an expert.

"[The State alleges] that he took drugs that day, enough that they had to take him to the hospital. Who knows what happened at the hospital, it's unclear. We could have got an expert to say: What would you say are his mental abilities to understand what is going on at this time. We then could have filed a motion to do a mental disease or defect defense. That is now foreclosed. We have surpassed that point, that is not available to us."

The district court denied Sawyer's request for a mistrial but granted his request to exclude the video from presentation to the jury as it was untimely discovered. Additionally, before the jury returned to the courtroom, Sawyer was given an opportunity to view the two bodycam videos in full. Sawyer claimed the video of him in the hospital showed he was referring to his mother by the incorrect name, which would have supported a different defense theory of mental disease or defect. The district court did not change its prior ruling, explaining the video would have irrefutably established Sawyer was served with the temporary PFA order.

5

Before coming to a verdict, the jury asked to review the transcript of Johnson's testimony "relating specifically to the serving of the Protective Order." Before the requested transcript was delivered to the jury, it found Sawyer guilty on all counts.

Sawyer filed a pro se motion for judgment of acquittal, complaining about a lack of notice related to Johnson's bodycam footage as the evidence was not produced in discovery. Sawyer also filed a motion for new trial claiming, among other things, that the State's failure to timely turn over evidence precluded a viable defense. The district court denied the motion and sentenced Sawyer to concurrent sentences of 27 months' imprisonment for burglary, 12 months in jail for theft, 6 months in jail for criminal damage to property, and 12 months in jail for violation of a PFA. Additional facts are set forth as necessary.

ANALYSIS

*Insufficient Record to Address a* Brady *Violation*

Sawyer argues the district court abused its discretion in denying his request for a mistrial based on the State's failure to turn over evidence before trial, which constituted a due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and affected his ability to present a defense. Sawyer asks us to reverse his convictions and remand for a new trial.

We review a district court's denial of a motion for mistrial for an abuse of discretion. A district court abuses its discretion if its decision is based on an error of fact or law, or is arbitrary, fanciful, or unreasonable. *State v. Warren*, 302 Kan. 601, 607-08, 356 P.3d 396 (2015). When a motion for mistrial is based on a *Brady* violation, we review the district court's determination as to the *Brady* violation de novo with deference

6

to the district court's findings of fact. *State v. Moore*, 302 Kan. 685, 699-700, 357 P.3d 275 (2015).

The district court may declare a mistrial if "prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to . . . the defendant . . . ." K.S.A. 22-3423(1)(c). In ordering a mistrial under K.S.A. 22-3423(1)(c), the district court must find there was prejudicial conduct that created a fundamental failure in the proceedings and the prejudicial conduct resulted in injustice by denying a fair trial that "could not be cured or mitigated through jury admonition or instruction." *Warren*, 302 Kan. at 608.

There are three elements of a *Brady* violation: "(1) '"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching'"; (2) '"that evidence must have been suppressed by the State, either willfully or inadvertently'"; and (3) the evidence must be material so as to establish prejudice."'" *State v. Warrior*, 294 Kan. 484, 506, 277 P.3d 1111 (2012). If there is a reasonable probability the outcome of the proceeding would differ had the evidence been disclosed, the evidence is considered material. 294 Kan. at 507.

> *The record is insufficient to determine whether the evidence withheld by the State was favorable to Sawyer.*

Sawyer claims Johnson's bodycam footage was exculpatory to each charge—violation of a protective order, burglary, theft, and criminal damage to property—because it tended to disprove the required state of mind to commit the offenses. Evidence favorable to the defense includes exculpatory and impeachment evidence. 294 Kan. at 506. Exculpatory evidence is evidence that tends to disprove a material fact as to guilt or punishment. The evidence does not need to be exonerating to be exculpatory. *State v. Hernandez*, 303 Kan. 609, 617, 366 P.3d 200 (2016).

7

*Violation of a protective order*

Sawyer argues Johnson's bodycam footage was favorable to his defense because it established he was not competent to be served with the temporary PFA order and that his lack of competence at the time of service shows he could not have knowingly violated the order. Specifically, Sawyer claims Johnson's bodycam footage was exculpatory evidence because it showed Sawyer was incapacitated when Johnson served him with the temporary PFA order on October 7, 2023. As a result, Sawyer claims he was not properly served and did not have knowledge of the order.

There must be personal service of a temporary PFA order by delivering a copy of the process and petition to the individual to be served. See K.S.A. 60-303(d)(1)(A); 60-3104(d). The purpose of serving process "is to fairly apprise the parties in a civil action of judicial action affecting their interests." *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1273, 136 P.3d 457 (2006). Sufficient notice of the action is required to fulfill "constitutional guaranties of due process." 281 Kan. at 1273. A disabled or incapacitated person cannot be served. See K.S.A. 60-304(a); *S.L.M. ex rel. D.M. v. Dickerson*, No. 105,533, 2011 WL 5833622, at *4-5 (Kan. App. 2011) (unpublished opinion). A person is incapacitated if he or she does not have the "ability to receive and evaluate relevant information, or effectively communicate decisions, or both." K.S.A. 77-201 *Thirty-first*, *Forty-second*.

However, Sawyer's claim ultimately fails because "[i]t is 'the well-established rule that an appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails.'" *State v. Vonachen*, 312 Kan. 451, 460, 476 P.3d 774 (2020); see also Supreme Court Rule 6.02(a)(4), (a)(5) (2026 Kan. S. Ct. R. at 36) (appellant has burden to furnish sufficient record to support claims of error; appellant's claims of error must be supported with specific citations to record on appeal). Sawyer did not ask for the bodycam footage to be

8

admitted or proffered. He now claims he was not required to admit the footage in the record on appeal and his proffer of evidence to the district court preserved his argument for appeal. We have no bodycam footage to review on appeal.

The district court was correct to find Johnson's bodycam footage of Sawyer receiving the temporary PFA order was not favorable to his defense in which he claimed he had no knowledge of the order because it was not served on him. But Sawyer's intoxicated mental state could have supported a different defense theory that was not available to him without having seen or possessed the video evidence. Because we cannot review the bodycam footage, we can only speculate based on the parties' arguments before the district court as to the circumstances of Johnson's interaction with Sawyer at the hospital and Sawyer's behavior. Sawyer failed to meet his burden to designate a sufficient record to establish his claimed error, and that failure prevents appellate review.

### Burglary and theft

Sawyer also claims Johnson's bodycam footage was exculpatory as to the burglary and theft charges because it tended to disprove Sawyer intended to enter his mother's house without her permission. Sawyer asserts burglary and theft are specific intent crimes and, with Johnson's bodycam footage, he could have asserted a voluntary intoxication defense.

To prove burglary, the State had to show beyond a reasonable doubt Sawyer entered Mother's house without authority and he intended to commit a theft therein. See K.S.A. 21-5807(a)(1)(A). To prove theft, the State had to prove beyond a reasonable doubt Sawyer obtained or exerted unauthorized control over Mother's food and beverages with the intent to permanently deprive her of those items. See K.S.A. 21-5801(a)(1). Theft is a specific intent crime. *State v. Mitchell*, 262 Kan. 434, 437, 939 P.2d 879

(1997). Voluntary intoxication may be a defense to specific intent crimes. *State v. Kershaw*, 302 Kan. 772, 777-78, 359 P.3d 52 (2015).

Sawyer relies on the same piece of evidence—Johnson's bodycam footage— to support his position the State failed to turn over favorable evidence. Specifically, Sawyer claims the bodycam footage showed he was intoxicated and could not form the requisite intent to commit burglary and theft. For the same reasons explained above, Sawyer failed to meet his burden to designate a record sufficient to establish his claimed error. See *Vonachen*, 312 Kan. at 460; Rule 6.02(a)(4), (a)(5).

*Criminal damage to property*

Sawyer argues Johnson's bodycam footage was also exculpatory as to the State's criminal damage to property charge because the footage tended to disprove he broke his mother's window. The State presented evidence suggesting Sawyer entered Mother's house without permission by breaking a window and crawling through it into her house where he was found. The State entered evidence from a home security camera showing Sawyer limping around Mother's house on October 8. Mother also testified there were sharp pieces of glass in the bedroom where the window was broken. Sawyer contends Johnson's bodycam footage would show he had a limp the day before; therefore, the limp could not be from breaking and crawling through the window.

Once again, we cannot compare the video footage to see if it supports Sawyer's claim as Sawyer failed to include Johnson's bodycam footage in the record on appeal. Sawyer, therefore, failed to designate a record sufficient to establish his claimed error.

As it relates to each of the State's charges—violation of a protective order, burglary, theft, and criminal damage to property—Sawyer failed to meet his burden to designate a record sufficient to establish his claimed error. We cannot properly review the

alleged *Brady* violation on appeal, and we find the district court did not abuse its discretion in denying Sawyer's motion for mistrial.

   *Evidence was suppressed by the State.*

   Suppressing or withholding evidence violates the defendant's due process rights under the Fourteenth Amendment to the United State Constitution. *Brady*, 373 U.S. at 86-87. Sawyer argues the State withheld exculpatory evidence—Johnson's bodycam footage—but acknowledges delayed disclosure may not constitute a *Brady* violation if he was not prejudiced. See *State v. Hirsh*, 310 Kan. 321, 335-36, 446 P.3d 472 (2019) (delayed disclosure may constitute a *Brady* violation if the defendant was prejudiced under the materiality component); *State v. Breitenbach*, 313 Kan. 73, 98-99, 483 P.3d 448 (2021) (finding disclosure was delayed rather than suppressed under second prong, but moving on to materiality component).

   Here, Sawyer filed a motion for discovery four months before trial. After the trial began, it became apparent Johnson had bodycam footage that was not turned over to Sawyer. The State tried to provide an explanation for its failure to turn over the evidence to Sawyer but otherwise did not dispute this point. Sawyer, however, received the bodycam footage during the trial and could have used the evidence to show that, even if he was physically served a copy of the PFA order, he effectively never received notice because he did not have the ability to receive and evaluate the relevant information. See K.S.A. 77-201 *Thirty-first*. Regardless, even if the State did more than delay disclosure of the evidence by failing to turn it over before trial, Sawyer cannot prevail on appeal as he failed to designate a record sufficient to establish his claimed error.

11

*Insufficient Record to Establish Prejudice*

Sawyer argues that (1) the State's late disclosure of Johnson's bodycam footage prevented him from effectively using the footage at trial; (2) he would have pursued an entirely different defense theory had the evidence been timely provided before trial; and (3) the district court erred in failing to review the video footage before denying his *Brady* argument. He also claims that, had none of these issues occurred, the trial result would have been different.

The State cannot withhold favorable evidence to the defendant "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Soto*, 301 Kan. 969, 980, 349 P.3d 1256 (2015). The reasonable probability burden is less than that required to show the evidence would more likely than not have changed the verdict. *Hirsh*, 310 Kan. at 337.

Based on the parties' arguments before the district court, it is possible the State's failure to turn over the evidence before trial prejudiced Sawyer. If Sawyer was truly as intoxicated as he claims the video shows, he potentially could have prevailed on an intoxicated defense theory. But there is no way for us to appropriately evaluate the contested evidence and its prejudicial effect because Sawyer failed to include the evidence in the record on appeal. In fact, Sawyer even argues that, although an appellate court traditionally defers to the trial court's factual findings when addressing a potential *Brady* violation, the appellate court is faced with "an impossible task when the trial court never reviewed the footage before deciding no *Brady* violation occurred due to the State's delayed disclosure of exculpatory evidence. See [*State v.*] *Newson*, [65 Kan. App. 2d 310,

12

328-29,] 564 P.3d [(2025)] (district court abused its discretion by failing to consider the evidence prior to finding the State's delayed disclosure did not violate *Brady*)." But the facts of this case are distinguishable from *Newsome* because Sawyer specifically moved for the video not to be shown to the jury. Based on Sawyer's request—after he reviewed the video—to exclude the video, the district court did not need to view the video if it was going to grant Sawyer's motion. Under these facts we observe no abuse of discretion by the district court in granting Sawyer's request to exclude the video.

*Request for New Trial*

Sawyer claims there is a reasonable probability the *Brady* violation contributed to his guilty verdict and the trial results would have been different had Sawyer timely received Johnson's bodycam footage and been able to raise a voluntary intoxication defense. Sawyer asks us to reverse and remand for a new trial. Sawyer advances no new argument or authority from that above, and, for the same reasons, his argument on appeal fails.

*Unendorsed Witness*

Sawyer next argues the district court erred in allowing the State to introduce an unendorsed witness, a Sedgwick County jail deputy, Victoria Simon, to testify on the second day of a two-day trial. Sawyer claims he had no time to prepare for her testimony, including reviewing her credentials or searching for any impeachment evidence. Sawyer also asserts Simon's testimony was critical as it rehabilitated Johnson's testimony after he lost credibility with the jury. Sawyer admits that, for us to find reversible error on this issue alone, he needed to request a continuance before the district court when he learned of the new witness even though most of the trial had concluded. See *State v. Brosseit*, 308 Kan. 743, 749, 423 P.3d 1036 (2018).

We review "the district court's decision to permit the late endorsement of a State's witness for an abuse of discretion." *Brosseit*, 308 Kan. at 747. To the extent we must engage in statutory interpretation, review is de novo. 308 Kan. at 748.

K.S.A. 22-3201(g) requires, with limited exceptions, the State to endorse the names of all witness on the complaint, information, or indictment at the time of filing. However, failure to timely endorse a witness "does not bar the State from endorsing the witness later." *Brosseit*, 308 Kan. at 749.

The purpose of K.S.A. 22-3201(g) is to prevent surprise "and allow the defendant an opportunity to interview the witnesses before trial." *State v. Snow*, 282 Kan. 323, 335, 144 P.3d 729 (2006). The district court's acceptance of a late endorsement of a State's witness is prohibited only when the defendant is prejudiced in the ability to defend his or her case. Prejudice occurs "when the late endorsement comes as a surprise 'and the testimony was critical or, in other words, of "a climactic and highly damaging nature."'" *Brosseit*, 308 Kan. at 749. Sawyer bears the burden to establish prejudice to his ability to defend against the State's charges. See *Snow*, 282 Kan. at 336.

After the district court ruled that it would not allow the State to offer Johnson's bodycam footage into evidence, the State asked to endorse Simon as a witness to prove Sawyer was given a copy of the temporary PFA order. The State proffered that Simon would testify she gave Sawyer his release paperwork when he was released from custody. The State explained it wanted to call Simon to the stand to clear up any records issues. Sawyer objected, explaining he did not receive any reports from Simon in discovery, and the State disclosed it determined the need to call Simon after the first day of trial concluded.

Simon testified she makes sure individuals look into their personal property bags to verify their belongings before signing release paperwork. She returned Sawyer's

14

personal property to him when he was released from custody on October 7, 2023. Upon Sawyer's release from custody, Simon followed procedure and confirmed with Sawyer the personal property he had when he was booked into custody was in his property bag. Sawyer signed a form stating his items—including clothing, the PFA order, and hospital discharge papers—were returned to him.

While the State failed to timely endorse Simon as a witness, it provided Sawyer the inmate property inventory paperwork showing he received a copy of the PFA order. The paperwork listed the arresting officer, the officer who received the jail booking, and the officer who released Sawyer. While the State may not have endorsed Simon as a witness, her signature and identification number were listed on a document that specifically showed Sawyer was provided with a copy of the PFA order.

The jury already heard conflicting testimony about whether the PFA order was served on Sawyer and whether Sawyer had notice of the order. Simon even admitted she did not personally go through Sawyer's property bag and verify what was inside and could not confirm the PFA order was in the bag—evidence the jury could weigh in coming to a verdict. Simon's testimony, therefore, was not critical or of a climactic and highly damaging nature as it supported Johnson's testimony, which was somewhat contradictory. See *Brosseit*, 308 Kan. at 749. The district court did not abuse its discretion in permitting the endorsement of Simon as a witness after the trial began and allowing Simon to testify.

*Cumulative Error*

Sawyer argues that, even if none of the errors he alleges are individually reversible, their cumulative effect requires reversal of his conviction. We have unlimited review over claims of cumulative error. *State v. Taylor*, 314 Kan. 166, 168, 496 P.3d 526 (2021).

15

Sawyer failed to meet his burden to provide a record sufficient to establish two of his claimed errors on appeal. Sawyer also failed to establish the district court abused its discretion in allowing Simon to testify at trial even though the State had not initially endorsed Simon as a witness. "Without error, there can be no cumulative error." *State v. Jones*, 283 Kan. 186, 218, 151 P.3d 22 (2007).

Affirmed.