No. 48,019

State of Kansas, *Appellee*, v. Louis J. Warren, *Appellant.*

(557 P. 2d 1248)

Opinion filed December 11, 1976.

*William L. Winkley*, of Salina, argued the cause, and *Ben A. Sellers, Jr.,* of Salina, was with him on the brief for the appellant.

*James L. Sweet*, County Attorney, argued the cause, and *Curt T. Schneider*, Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: Defendant-appellant, Louis J. Warren, appeals from a conviction by a jury of felony theft in violation of K. S. A. 21-3701. Defendant's two contentions on appeal relate to the sufficiency of the state's evidence.

On September 5, 1974, defendant and two other individuals were arrested in Salina and charged with possession and possession with intent to sell a quantity of unlawful drugs. The arrests stemmed from an incident which took place in a Salina drug store. Defendant was fingerprinted at approximately 10 p. m. and placed in

a room in the booking area of the Salina Police Headquarters. When officers returned to this room a few minutes later, they discovered the defendant had escaped from custody.

Around 3:00 or 4:00 a. m. the following morning a man, later identified as the defendant, was seen by D. L. Karnes in WaKeeney, approximately 135 miles west of Salina. Mr. Karnes, the owner of a motel, was awakened by the defendant who asked for a room and said he wanted to use the telephone. Karnes told the defendant he had no vacancies, but that there was a pay telephone across the street at an all-night service station.

Instead of walking across the street, defendant went around to the back of the motel. Karnes then walked to a window in his office at the back of the motel and saw defendant standing between a yellow flat-bed truck and an automobile owned by Karnes. Karnes testified at trial that he then went to the back door of the motel and yelled at the man, at which time defendant turned and trotted back across the street to the service station.

On the next day, September 6, Officer Leon Reeves of the WaKeeney Police Department recovered the yellow flat-bed truck from behind the Karnes motel. Painted on the side of the truck was the name, "Larson Building Center, Inc., Salina, Kansas." A check of the truck failed to produce any legible fingerprints. Reeves testified at defendant's trial that the truck was nearly out of gas when he recovered it. It was also brought out in the trial testimony that the lumberyard, from which the truck was taken, is approximately four blocks from the Salina Police Department.

Following his brief encounter with Karnes, defendant was not seen again in WaKeeney. According to his own testimony, after defendant left the Salina police station he went to Denver, Colorado, his home, and then returned to Salina where he surrendered to police about one week later.

Upon his surrender, the defendant was charged with felony escape and theft of the lumber truck in addition to possession and possession with intent to sell pentobarbital and secobarbital. At trial the state dismissed the escape count and the jury acquitted defendant on both the possession and possession with intent to sell charges. A verdict of guilty was rendered on the one remaining count charging defendant with felony theft of the lumber truck.

On appeal the defendant specifies two points, both of which go to the sufficiency of the evidence to support his conviction. In one of these points he contends the evidence was insufficient for the

jury to determine that the defendant exerted any unauthorized control of property. Clearly, there is no merit to this contention. Although there were no eyewitnesses to the taking of the truck, the contemporaneous disappearance of the truck and defendant, when coupled with evidence that he was later seen standing by the truck at the WaKeeney motel, leaves a strong inference that the defendant drove the lumber truck from Salina to WaKeeney. When confronted with the question whether the evidence is sufficient to support a factual determination of the jury, the scope of our review is limited. The rule was restated in the recent case of *State v. Beard,* 220 Kan. 580, 552 P. 2d 900, wherein we held:

"In a criminal case, the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state." (Syl. 5.)

See, also, *State v. Brown,* 217 Kan. 595, 538 P. 2d 631, and cases cited therein. We have also said it is well-established in this jurisdiction that a conviction of even the gravest offense may be sustained by circumstantial evidence. (*State v. Ritson,* 215 Kan. 742, 529 P. 2d 90, and *State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728.) Tested by these standards, the evidence in the instant record unquestionably supports the jury's determination that the defendant exerted unauthorized control over the lumber truck.

In his other point on appeal the defendant argues the verdict of the jury was contrary to the evidence in that the evidence did not show that the defendant had intended to permanently deprive the owner of the use or benefit of property. In his argument on this contention, defendant goes beyond the point, as stated, to argue that it was clearly erroneous not to instruct on unlawful deprivation of property (K. S. A. 21-3705), as being a lesser included offense of the theft of the truck of which he stands convicted.

Theft for which defendant was convicted is defined in K. S. A. 21-3701 which reads in part pertinent to the charge herein:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

"(a) Obtaining or exerting unauthorized control over property; or"

The phrase "to deprive permanently," as used in the statute and as applicable to different situations, is defined in K. S. A. 21-3110 (6) (a), (b) and (c) [Amended, Laws 1976, Ch. 145, Sec. 106]. The definition pertinent to the charge herein is set out in 21-3110 (6) (a) in these words:

"(6) To 'deprive permanently' means to:

"(a) Take from the owner the possession, use or benefit of his property, without an intent to restore the same; or"

In the record presented, there is no evidence of any intent of defendant to restore the truck to its owner. While defendant apparently took the stand none of his testimony is reproduced in the record. From statements made in both the defendant's and state's briefs we take it that defendant's testimony was entirely exculpatory—that he did not take the truck at all. His argument before the trial court was that the evidence was insufficient to establish the taking. On appeal defendant still maintains the evidence is insufficient to prove the taking, but makes the further somewhat inconsistent argument that even if the evidence was sufficient to prove the taking it still fell short of showing an intention to permanently deprive. Defendant did not request an instruction on unlawful deprivation under 21-3705 at trial, nor did he include failure to so instruct in his points on appeal. On the record presented, we do not find clear error shown in this regard.

In his observations concerning "The New Kansas Theft Law," Professor Paul E. Wilson in Vol. 20 Kansas Law Review, p. 385, comments on "Intent to Deprive" in these words:

". . . The emphasis in the statutory definition is upon the permanency of the intended deprivation. However, it must be observed that while the definition undoubtedly includes the case where the thief has a positive purpose permanently to appropriate the property to his own benefit, it is not limited to that situation. Instead, the statute speaks of taking property 'without an intent to restore the same.'

"Any evidence of an intent to deal with the property in such a way that it is not likely to be restored intact should be sufficient to convict of theft. . . .

"The intent to deprive permanently must be inferred from the overt facts and circumstances proven. Unless the facts establish an intent to ransom the property back to the owner or to sell or encumber it, the jury must decide in the individual case whether the circumstances intended by the defendant entailed the likelihood that the property would not be restored. The crucial factual inquiry will be directed to the use the defendant intended when he obtained or exercised unauthorized control." (pp. 409-410.)

We believe the facts and circumstances proven in this case are sufficient for the drawing of an inference of intent to permanently deprive.

An accused has the right to have his theory of the case presented to the jury under appropriate instructions where there is support therefor in the evidence. (*State v. Boyd*, 216 Kan. 373, 532 P. 2d

1064.) This right has not been denied defendant in this case. Defendant presented no evidence bearing on intent and as best as we can ascertain from the record and briefs, defendant's theory at trial did not bear on the issue of his intent, but was directed at establishing that he committed no offenses concerning the truck and that Mr. Karnes was mistaken in his identification of defendant in WaKeeney.

In *State v. Winters,* 120 Kan. 166, 241 Pac. 1083, the record disclosed that an automobile was taken from Anthony, Kansas, and recovered the next day in Depew, Oklahoma, 200 miles away. The defendant was charged and convicted of grand larceny (R. S. 21-533, a predecessor of K. S. A. 21-3701). One of defendant Winter's contentions on appeal was that the jury should have been instructed on joy-riding under R. S. 21-544, the antecedent of K. S. A. 21-3705. In rejecting defendant's contention this court said:

"Appellant contends that it was the duty of the trial court to give a definition of grand larceny, and calls our attention to R. S. 21-544, which makes it a misdemeanor for a person to take, carry away and use any automobile with intent to deprive the owner of the use thereof against his will, but not with the intent of stealing or converting the same permanently to his own use. The information in this case was drawn under R. S. 21-533, and specifically charges that the defendant 'did unlawfully and feloniously steal, take and carry away one Ford touring automobile,' etc. There is no suggestion from the record that during the trial there was any contention on behalf of the defendant that the automobile was taken with the intention of depriving the owner of its use only temporarily and not permanently. . . ." (p. 170.)

A similar contention raised in the same context, in a motorcycle theft case, was before the Supreme Court of New Hampshire in *State v. O'Brien,* 114 N. H. 233, 317 A. 2d 783. Justice Grimes speaking for the court held:

". . . His entire defense was completely exculpatory. He testified he had nothing to do with the offenses, was elsewhere when they occurred, and that the two alleged accomplices were lying because of a grant of immunity from prosecution as part of a plan of a police officer to get the defendant because a previous charge of larceny of a vehicle had been reduced. No argument regarding the lesser offense was made and no request for such an instruction was made until after the charge had been given but before the jury retired. *State v. Davis,* 83 N. H. 435, 144 A. 124 (1928). Thus the evidence furnished no rational basis for a finding of guilt of the lessor offense. (Citing cases.) (p. 236.)

On the record presented we find no error shown and the judgment is affirmed.