NOT DESIGNATED FOR PUBLICATION

No. 113,070

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY GIBSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 18, 2015. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., GARDNER, J., and BURGESS, S.J.

*Per Curiam*:  One morning, an officer from the sheriff's department encountered Zachary Gibson pushing a motorcycle down the road on August 12, 2013. When asked, Gibson assured the officer that the motorcycle's owner had allowed him to take it, but the owner maintained that the motorcycle belonged in his shed. At trial, a jury convicted Gibson of burglary of the shed and theft of the motorcycle. Gibson appeals.

FACTUAL AND PROCEDURAL BACKGROUND

While responding to a dispatch call one August 2013 morning, Officer Jack Trussell of the Reno County Sheriff's Department spotted "a white male pushing . . . a little motorcycle" down the road. Officer Trussell approached the man, Gibson, and asked whether he "was having trouble with the bike." Gibson replied that the motorcycle was not starting due to a missing ignition switch. Indeed, Officer Trussell noticed "a bunch of duct tape" in the place where the ignition switch belonged. He also observed a roll of duct tape and a backpack on the motorcycle's back bar.

Officer Trussell asked whether Gibson owned the motorcycle, and Gibson replied that it belonged to Cody Blackwood, who lived nearby. Gibson explained that he had picked the motorcycle up from Blackwood's home with Blackwood's blessing. He planned on bringing the motorcycle to his home in Hutchinson to replace the missing ignition switch.

Gibson also provided Officer Trussell with Blackwood's phone number. When Officer Trussell called Blackwood to confirm Gibson's story, Blackwood stated that he believed his motorcycle to be in his shed and that he never gave Gibson permission to take it. When prompted, Blackwood checked his shed only to discover that his motorcycle and a backpack had gone missing. A short time later, Blackwood met Officer Trussell and Gibson at the scene and identified both the motorcycle and backpack as those missing from his shed.

At some point during this encounter, Deputy John Orrison arrived on scene to assist Officer Trussell. Deputy Orrison later testified that Officer Trussell told him that Gibson found the motorcycle on the street and that "he was taking it back to his shop in town to replace the starter." When Deputy Orrison asked Gibson, Gibson said he found it on the street while on his way to retrieve a pool cue from Blackwood's house. Gibson

2

decided to pick up the motorcycle to prevent Blackwood from losing it. Like with Officer Trussell, Gibson told Deputy Orrison that he intended to fix the broken ignition switch. Later, Deputy Orrison investigated the shed at Blackwood's home and discovered tire tracks and footprints consistent with the motorcycle and Gibson's shoes.

The State charged Gibson with burglary of Blackwood's shed and theft of the motorcycle and backpack. At trial, Officer Trussell acknowledged Gibson's cooperativeness throughout their encounter, noting that he voluntarily provided information and never tried to flee. Deputy Orrison echoed this at trial, noting that Gibson never tried to run or acted nervous but adding that "there was something odd about his character."

Officer Trussell also testified that Blackwood reported last seeing the motorcycle in his shed and in proper working order. Blackwood confirmed this account as well, stressing that he never permitted Gibson—a man he knew from high school—to take his motorcycle. However, Blackwood also acknowledged that Gibson had attended a party at his home the night before the incident and that they discussed motorcycles. Blackwood also emphasized that he never gave Gibson permission to come back for the motorcycle. Additionally, Blackwood testified that he did not have a pool table.

Based on this evidence, the jury convicted Gibson of both burglary and theft. The district court sentenced him to a controlling sentence of 24 months' probation with an underlying sentence of 24 months' imprisonment. Gibson timely appealed.

ANALYSIS

*Did the State present sufficient evidence to convict Gibson of burglary and theft?*

On appeal, Gibson argues that the State presented insufficient evidence of his intent. Without such evidence of his intent, Gibson argues neither conviction can stand.

When the sufficiency of the evidence is challenged in a criminal case, this court reviews such claims by looking at all the evidence in the light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In determining whether there is sufficient evidence to support the conviction, this court generally will not reweigh evidence or the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). Importantly, a verdict may be supported by circumstantial evidence if such evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. However, the evidence need not exclude every other reasonable conclusion or inference. *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 455 (2008).

As is relevant to this case, burglary in Kansas is entering into nondwelling building without authority and with the intent to commit a theft within. K.S.A. 2014 Supp. 21-5807(a)(2). Theft, meanwhile, is when an individual obtains or exerts unauthorized control over property "with intent to permanently deprive the owner of the possession, use or benefit" of that property. K.S.A. 2014 Supp. 21-5801(a)(1). In his brief, Gibson implicitly acknowledges that he obtained control, possibly without authority, over the motorcycle but argues that the State never demonstrated his intent to permanently deprive Blackwood of it. At most, he claims the State demonstrated that he picked up the motorcycle with good intentions: he wanted to fix the missing ignition switch and prevent Blackwood from losing his property.

As with the elements of other crimes, intent to permanently deprive the owner of his or her property can be inferred from the overt facts and circumstances of the case. *State v. Warren*, 221 Kan. 10, 13, 557 P.2d 1248 (1976). Moreover, "[p]ossession by an accused of recently stolen property is sufficient to sustain a conviction of theft where a satisfactory explanation is not given." *State v. McCammon*, 45 Kan. App. 2d 482, 489, 250 P.3d 838, *rev. denied* 292 Kan. 968 (2011).

In this case, the facts presented by the State clearly support the inference that Gibson formed the requisite intent to deprive. Despite Gibson's claims to the contrary, the motorcycle's owner unequivocally testified that Gibson did not have his permission to take it. In fact, Blackwood believed the motorcycle to be in his shed when Officer Trussell first contacted him. Moreover, Gibson provided two different and conflicting accounts of where he found the motorcycle. In one version, he collected it from Blackwood's home with his blessing. In the other, he found it on the road and took it to ensure its safety. Gibson also had Blackwood's backpack, which he never explained. The motorcycle, which Blackwood reported ran the night before, no longer functioned due to the damaged ignition switch. Although Gibson told Deputy Orrison he was going to Blackwood's to collect a pool cue he had left there the night before, Blackwood testified at trial that he did not have a pool table, bringing the credibility of Gibson's account further into question.

Gibson's conflicting statements and his conduct fully support the jury's conclusion he acted with the impermissible criminal intent necessary for both burglary and theft. There is nothing to indicate that he contacted Blackwood or attempted to return the motorcycle, despite having Blackwood's contact information. Blackwood not only expected the motorcycle to be in his shed, but he felt surprised to find it missing and emphasized that he never allowed Gibson to take the motorcycle. Additionally, Gibson was pushing the motorcycle away from Blackwood's house when officers encountered him, not toward it. In short, Gibson's explanations for how the motorcycle came into his

5

possession were inconsistent enough that the jury could have found the story unsatisfactory and inferred that Gibson intended to permanently deprive Blackwood of its use. If the jury believed that Gibson's account lacked credibility, the jury could have also rejected his explanation about his plans to repair the ignition switch.

On appeal, this court cannot reweigh the evidence or evaluate the credibility of witnesses, but Gibson essentially asks this court to find the officers less credible than his own statements to those officers. See *Hall*, 292 Kan. at 859. The verdict makes clear that the jury did not believe Gibson's statements. A rational factfinder could have come to the same conclusion and convicted Gibson of both burglary and theft. Accordingly, we affirm Gibson's convictions.

Affirmed.