NOT DESIGNATED FOR PUBLICATION

No. 116,312

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDY MICHELLE BELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Chase District Court; MERLIN G. WHEELER, judge. Opinion filed November 17, 2017. Affirmed in part and remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and HEBERT, S.J.

PER CURIAM: Brandy Bell appeals her conviction of criminal theft. She claims the evidence at trial was insufficient to support her conviction and that one of the conditions of probation violated her first amendment right to free speech.

Bell's conviction arose out of the actions she took while managing an EZ Go convenience store in 2015. Bell was hired as the manager of the EZ Go convenience store in February of 2015. As manager, Bell was responsible for balancing the books at the beginning of each shift and auditing the money. Along with Bell, Troy Clark, Terri LeBlanc, Lindsey Boline, and Jessica Essex had access to the books and the money.

1

Bell stated that she liked to keep about $10,000 on hand for the purpose of making change so that the store didn't run out of cash when it got busy. The store policy was to limit the cash on hand to between $2,000 and $3,000. From the time Bell was hired in February until she was fired in September, she slowly increased the cash on hand from $2,000 to about $9,000.

On August 2, 2015, assistant manager Essex opened the store and found that the cash on hand was short $3,333. She confronted Bell who admitted to Essex that she had borrowed the missing money from the store to pay for her car and home expenses. Bell was fired the following month. An audit at the store disclosed that the cash was $5,961.34 short.

At trial, both Essex and Boline testified that Bell admitted to them that she had taken the money from EZ Go and that she claimed she intended to return the money to the store. But Bell testified that she never admitted to taking the money, that Essex and Boline were lying, and that she did not take the money.

A jury found Bell guilty of felony theft. Prior to the sentencing hearing, EZ Go filed a victim impact statement in which it stated, "After conviction, [Bell] has been harassing many of my employees through text and Facebook. She has been very hateful and bullying them." The district court granted Bell 12 months' probation with an underlying prison term of 6 months. As conditions of her probation, the district court prohibited Bell from, among other things, having any interaction with EZ Go or any of its employees and from having or maintaining any type of social media account. Bell's appeal brings the matter to us.

*Sufficiency of the Evidence of Criminal Theft*

Bell argues the evidence at trial was insufficient to find her guilty of criminal theft because the State failed to prove she had an *intent to permanently deprive* EZ Go of the money. She contends she was only borrowing the money and intended to return the funds to the store. Bell cites *State v. Edwards*, 48 Kan. App. 2d 383, 396-98, 290 P.3d 661 (2012), as standing for the proposition that "an essential element of theft is the specific intent to keep the property taken." Bell cites to the testimony of Boline and Essex in which both testified that Bell told them she only intended to borrow the money and intended to return the money to EZ Go, though at trial Bell claimed Boline and Essex were lying when they testified that she admitted taking the money.

In considering this claim, we examine the evidence in the light favoring the State to determine whether a rational fact-finder could have found Bell guilty based on the evidence presented at trial. *State v Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In doing so, we do not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). But we do consider reasonable inferences arising from the facts. *State v. Herndon*, 52 Kan. App. 2d 857, 862, 379 P.3d 403 (2016), *petition for rev. denied* October 6, 2017. We will only upset a jury verdict in the rare case in which the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). Even verdicts that are based wholly on circumstantial evidence will not be overturned so long as the evidence provides a reasonable basis for a fact-finder to find guilt beyond a reasonable doubt. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Under K.S.A. 2016 Supp. 21-5801(a)(1), a finding of guilt for theft requires the State to prove beyond a reasonable doubt that the defendant obtained or exerted unauthorized control over property with the *intent to permanently deprive* the owner of the possession, use, or benefit of the owner's property.

To permanently deprive is to "[t]ake from the owner the possession, use or benefit of his property, without an intent to restore the same." K.S.A. 2016 Supp. 21-5111(f)(1). The State may prove the defendant had an intent to permanently deprive the owner of its property with circumstantial evidence. *State v. Thach*, 305 Kan. 72, 83, 378 P.3d 522 (2016). One way for the State to prove the defendant intended to permanently deprive the owner of its property is for it to show that the defendant had no intent to restore the property to the owner. *State v. Warren*, 221 Kan. 10, 13, 557 P.2d 1248 (1976).

There have been many examples of what the State needs to show in order to prove the defendant had no intent to restore the property to the owner and, thus, that he or she had an intent to permanently deprive the owner of the property. See *State v. Mitchell*, 262 Kan. 434, 437-40, 939 P.2d 879 (1997) (when the defendant took five separate vehicles from five separate people over the course of a month and only held each vehicle for a short period of time but never made an attempt to return the vehicles); *State v. Keeler*, 238 Kan. 356, 359-61, 710 P.2d 1279 (1985) (when the defendant claimed he was only borrowing the vehicle but failed to inform the owner of its whereabouts or attempt to return the vehicle to the owner); *Warren*, 221 Kan. at 13 (when the defendant left the stolen vehicle in another town and never informed the owner of its whereabouts).

Here, viewing the facts in the light favoring the State, the circumstantial evidence overwhelmingly shows that Bell did not intend to restore the money to EZ Go and, thus, that she intended to permanently deprive EZ Go of the money. Bell took the money from EZ Go prior to August 2, 2015, and still had not returned the money or made any attempt to return the money by the time she was fired a month later. Instead of taking action to return the money to EZ Go, Bell began creating reports to cover her tracks and began doctoring the accounting reports to show that the money that was unaccounted for was actually in another set of funds. When confronted with the discrepancy, Bell still did not attempt to return the money but instead again tried to cover up the action through her reports. She used the money over a period of time without informing the owner of its

4

whereabouts. "If to do were as easy as to [profess what should be done], chapels had been churches, and poor men's cottages princes' palaces." William Shakespeare, *The Merchant of Venice*, act 1, sc. 2.

Finally, Bell's reliance on *Edwards* is misplaced. *Edwards* dealt with aggravated robbery, not theft. The court in *Edwards* held that robbery does not require the State to prove that there was a specific intent to permanently deprive a victim of property. 48 Kan. App. 2d at 396-98. The court did not hold that theft requires a defendant to specifically intend to "keep the property taken." 48 Kan. App. 2d at 399. In fact, such a holding would be inconsistent with Kansas Supreme Court precedent and with the direct statutory language. See K.S.A. 2016 Supp. 21-5111(f); *Warren*, 221 Kan. at 13 (recognizing that to prove intent to permanently deprive, the State merely needs to present evidence that the defendant did not intend to restore the property to the rightful owner). To the extent that the court in *Edwards* used any such language in its opinion, the court was quoting *State v. Montgomery*, 26 Kan. App. 2d 346, 988 P.2d 258 (1999), so that it could disagree with the quotation and with the *Montgomery* court's analysis. *Edwards*, 48 Kan. App. 2d at 398-99.

The evidence was sufficient to support Bell's conviction.

*Probation Restriction a Violation of First Amendment Rights*

Bell argues for the first time on appeal that the district court's restriction on her usage of social media as a condition to probation was unconstitutional, because it unreasonably restricted her right to free speech.

Subject to a few specific exceptions, constitutional challenges are not reviewable if they are raised for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). The exceptions to this rule include the consideration of the theory if it

5

is necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

"Freedom of speech and of the press are secured against abridgement by the federal and state Constitutions. They are among the most fundamental personal rights and liberties of the people." *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 234, 689 P.2d 860 (1984). The First Amendment protections for free speech extend to internet communications. *Reno v. ACLU*, 521 U.S. 844, 870, 117 S. Ct. 2329, 138 L. Ed. 874 (1997). Here, Bell has challenged the denial of her right to the freedom of speech. Accordingly, we will consider this issue regarding the claimed denial of a fundamental right, which is a question of law over which we have unlimited review. *State v. Bennett*, 288 Kan. 86, 91, 200 P.3d 455 (2009).

Typically, a district court may impose any conditions on probation that it deems proper. K.S.A. 2016 Supp. 21-6607. But the district court may not impose probation conditions that violate the defendant's constitutional rights absent a compelling State interest. 288 Kan. at 91. Any imposition on a defendant's constitutional right "'must bear a reasonable relationship to the rehabilitative goals of probation, the protection of the public, and the nature of the offense.' [Citation omitted.]" *State v. Gile*, No. 108,279, 2014 WL 1302608, at *11 (Kan. App. 2014) (unpublished opinion).

In *Gile*, this court found that the probation condition preventing the defendant from commenting about a specific family on the internet was a violation of his right to free speech because the probation condition was not reasonably related to the crime of conviction. 2014 WL 1302608, at *11-12. There, the defendant was charged with blackmail. The probation restriction did not prevent the defendant from committing further crimes and was not narrowly tailored to specific matters relating to the case.

Here, the victim impact statement disclosed that Bell had been harassing and bullying EZ Go employees by means of text messages and the use of Facebook. As conditions for probation, the district court prohibited Bell from having any interaction with EZ Go or any of its employees and from having or maintaining any type of social media account.

The ban on social media related to the protection of the victim's employees from Bell's harassment. But, as the State concedes, it was unconstitutionally overbroad because it had nothing to do with the crime in question which did not involve the use of the internet or social media. The State has no objection to vacating this probation condition. Therefore, we remand to the district court in order for it to remove this overbroad condition on Bell's constitutional right to free speech.

Affirmed in part and remanded with directions.