NOT DESIGNATED FOR PUBLICATION

No. 120,002

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ESTEBAN ROMO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed November 22, 2019. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: Following a jury trial, Esteban Romo was convicted of a single count of felony theft of property with a value of at least $1,500 but less than $25,000. Romo appeals, citing insufficient evidence as well as various trial errors. For the reasons stated below, we affirm Romo's conviction.

FACTS

On October 24, 2017, Michaela Lopez took her 2004 Grand Prix to Romo's Auto in Liberal, Kansas, for repairs. Lopez left her keys with Andres Romo (Andres), who

promised to call her with an estimate once he determined what was wrong. After she did not hear back from Andres, Lopez returned to the shop four or five hours later. Lopez spoke with Andres' brother, Esteban Romo (Romo), who said that he did not know where Andres was or where Lopez' car keys were. According to Lopez, Romo then got into her car and quickly drove away from the shop.

Lopez called the police to report that Romo had taken her car without permission. Andres came back to the shop sometime after law enforcement arrived, but Romo never returned with Lopez' car. Later that evening, Lopez located her car parked on a street near her house with the keys inside. Lopez' car had not been repaired.

The State charged Romo with a single count of felony theft of property with a value of at least $1,500 but less than $25,000. A jury found Romo guilty as charged. The district court sentenced Romo to 12 months in prison. Romo filed this timely appeal.

ANALYSIS

Romo raises four issues on appeal: (1) The evidence was insufficient to support his conviction, (2) the district court erred in instructing the jury, (3) the prosecutor's comments during opening statement and closing argument constituted prosecutorial error, and (4) the cumulative effect of these alleged errors deprived him of his constitutional right to a fair trial.

1. *Sufficiency of the evidence*

Romo argues the evidence presented at trial was insufficient to support his conviction of felony theft of property with a value of at least $1,500 but less than $25,000.

2

When the sufficiency of evidence is challenged in a criminal case, we review such claims by looking at all the evidence in a light most favorable to the prosecution and determining whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An appellate court generally will not reweigh the evidence or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). Moreover, a verdict may be supported by circumstantial evidence, if that evidence provides a basis from which the fact-finder may reasonably infer the existence of the fact in issue. The evidence need not exclude every other reasonable conclusion or inference. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

To obtain a conviction for felony theft, the State was required to prove, in relevant part, that (1) Romo obtained or exerted unauthorized control over Lopez' property; (2) Romo intended to deprive Lopez permanently of the possession, use, or benefit of said property; and (3) said property had a value of at least $1,500 but less than $25,000. See K.S.A. 2018 Supp. 21-5801(a)(1), (b)(3). Romo asserts that the State failed to present sufficient evidence of each element.

a. *Unauthorized control*

Although not defined by statute, this court has held that the term "unauthorized control" means "'control exercised over property of another without the consent of the owner.'" *State v. Maxon*, 32 Kan. App. 2d 67, 76, 79 P.3d 202 (2003); see K.S.A. 2018 Supp. 21-5111.

Romo claims the evidence presented at trial established that he was authorized to drive Lopez' car because he was an employee of Romo's Auto. Romo notes that when

3

Lopez returned to the shop, her car was not fixed and she had not yet heard from Andres. According to Romo, this evidence suggests that he was merely test-driving the car to determine what was wrong. Romo points out that Lopez never told him that he could not drive her car.

Although Lopez agreed she knew someone would have to test-drive her car in order to determine what was wrong, there is no indication in the record that Romo was doing so when he drove away from Romo's Auto. Lopez testified that she took her car to the shop and left the keys with Andres. When Lopez later returned to the shop, Romo told her that he did not know where Andres was or where her keys were. Without explanation, Romo then got into Lopez' car and quickly drove away. Lopez testified that she did not give Romo permission to drive her car. Romo made no effort to return Lopez' car to Romo's Auto or to Lopez personally. Instead, Lopez later found her unrepaired car on a street near her house with the keys inside. Romo's action of taking Lopez' car without permission or explanation, coupled with his failure to return the car to her or the shop, demonstrates the sort of unauthorized control prohibited as theft.

b. *Intent to permanently deprive*

To permanently deprive is to "[t]ake from the owner the possession, use or benefit of property, without an intent to restore the same." K.S.A. 2018 Supp. 21-5111(f)(1). The State may rely on circumstantial evidence to prove the defendant had an intent to permanently deprive the owner of his or her property. See *State v. Thach*, 305 Kan. 72, 83-84, 378 P.3d 522 (2016).

Romo alleges the State failed to present sufficient evidence to establish that he intended to permanently deprive Lopez of her car. Romo asserts that, at most, the State established an intent to temporarily deprive. Specifically, Romo notes that Lopez got her car back that same night, undamaged and parked near her house.

4

One way for the State to prove the defendant intended to permanently deprive the owner of his or her property is to show that the defendant had no intent to restore the property to its owner. See *State v. Mitchell*, 262 Kan. 434, 437-40, 939 P.2d 879 (1997) (finding evidence of intent to permanently deprive where defendant took five vehicles from five people over the course of a month; defendant held each vehicle for short time but never attempted to return vehicles); *State v. Keeler*, 238 Kan. 356, 359-60, 710 P.2d 1279 (1985) (finding intent to permanently deprive where defendant claimed he was only borrowing vehicle but failed to inform owner of its whereabouts or attempt to return vehicle to owner), *overruled on other grounds by State v. McKissack*, 283 Kan. 721, 156 P.3d 1249 (2007); *State v. Warren*, 221 Kan. 10, 13, 557 P.2d 1248 (1976) (finding intent to permanently deprive where defendant left stolen vehicle in another town and never informed owner of its whereabouts).

Viewed in a light most favorable to the State, we can infer from the evidence presented that Romo did not intend to return the car to Lopez and therefore intended to permanently deprive Lopez of her car. After Lopez asked about her car, Romo told Lopez he did not know where his brother was or where her keys were. Right after he told Lopez he did not know where her keys were, Romo left the shop—without any explanation— and drove away quickly in Lopez' car, presumably with her keys. Romo made no effort to return the car to Romo's Auto or to Lopez personally. Instead, Lopez later found her car on a street "near" her house with the keys inside. Nothing in the record indicates how near Lopez' house the car was located or that Romo even knew where Lopez lived. The jury could reasonably conclude from this evidence that Romo intended to permanently deprive Lopez of her car.

c. *Value of property*

To convict Romo of felony theft, the State was required to prove that the value of Lopez' car was at least $1,500. See K.S.A. 2018 Supp. 21-5801(b)(3). The value of stolen

property is determined by its fair market value at the time of the theft. *State v. Owens*, 248 Kan. 273, 285, 807 P.2d 101 (1991). Fair market value is "the price that a willing seller and a willing buyer would agree upon . . . in an arm's-length transaction." *State v. Baxter*, 34 Kan. App. 2d 364, 366, 118 P.3d 1291 (2005).

At trial, Lopez testified that she had paid $6,000 for her car in 2016. Lopez stated that her car was "[p]robably not [worth] much anymore" because something was wrong with it. Corporal Blake Rogers of the Liberal Police Department testified that during his investigation of the crime, he determined that the value of Lopez' car was $2,081 by obtaining an estimate from Kelly Blue Book. Rogers said that the estimate was based on the car being in fair condition, the second lowest possible value. Rogers admitted that he did not inspect Lopez' car prior to checking the value online but stated that he had seen the car on prior occasions and was aware that it had no body or interior damage. A computer printout of the car's Kelly Blue Book value was admitted into evidence.

Romo claims there was insufficient evidence to establish that Lopez' car was worth at least $1,500 because Corporal Rogers did not testify regarding when he last saw the car, the car's mileage, or how the needed repairs affected the car's value. Romo also notes that Lopez did not know how much the car was worth.

Romo essentially asks us to reweigh the evidence and reassess witness credibility, which we cannot do. See *Chandler*, 307 Kan. at 668. Rogers testified that he was familiar with Lopez' car and that the interior and the body appeared to be in good condition. And contrary to Romo's claim, evidence of the car's mileage appeared on the Kelly Blue Book printout and therefore was considered in determining the car's value. Viewed in the light most favorable to the State, there is sufficient evidence to support Romo's conviction for felony theft of property with a value in excess of $1,500.

6

2. *Instruction error*

Romo argues the district court erred by instructing the jury in a way that suggested he had been charged with multiple crimes or committed multiple acts that could constitute theft.

Romo admits he did not raise this issue before the district court. Romo's failure to object to the instructions below does not bar him from raising the issue for the first time on appeal but instead requires us to review it under the clearly erroneous standard. See K.S.A. 2018 Supp. 22-3414(3); *State v. Brown*, 306 Kan. 1145, 1164, 401 P.3d 611 (2017). Under this standard of review, we first determine whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. If error is found, the defendant has the burden to firmly convince this court that the jury would have reached a different result in the absence of the error. 306 Kan. at 1164; see *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018) (party claiming clear error has burden to demonstrate prejudice).

The district court informed the parties at the instructions conference that, although neither party had requested it, the court had included an instruction informing the jury that each crime charged against the defendant was a separate and distinct offense. The court indicated it was including this instruction because—in addition to instructing the jury on the elements of the charged crime of felony theft (theft of property with a value of at least $1,500 but less than $25,000)—it also was instructing the jury on the lesser included offense of misdemeanor theft (theft of property with a value of less than $1,500). See K.S.A. 2018 Supp. 21-5801(b)(3), (b)(4). The court asked the parties whether they had any objection to the instruction. The prosecutor responded, "I don't know that it's necessary, but I have no objection to it." The judge replied, "I don't think it hurts anything." Defense counsel did not object to the instruction. Similarly, neither party

7

objected to a multiple acts instruction. The district court later provided both instructions to the jury as instructions 14 and 15. Instruction No. 14 provided:

> "Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

Instruction No. 15 provided: "The State claims distinct multiple acts which each could separately constitute the crime of theft. In order for the defendant to be found guilty of theft, you must unanimously agree upon the same underlying act."

a. *Factually inappropriate*

Romo argues that these instructions, while correct statements of the law, were not factually appropriate in this case because the State only charged him with a single count of theft and never alleged that the theft involved multiple acts.

Romo is correct that the instructions were not factually appropriate here. Instruction No. 14 is based on PIK Crim. 4th 68.060 (2016 Supp.). The Notes on Use for this pattern instruction state that the instruction "should be given when multiple counts are charged." PIK Crim. 4th 68.060 (2016 Supp.). Here, the State only charged Romo with a single count of felony theft. The lesser included offense of misdemeanor theft did not constitute an additional charge, as Romo could only be convicted of either felony or misdemeanor theft, not both. Thus, the district court erred in issuing instruction No. 14.

Instruction No. 15 is based on PIK Crim. 4th 68.100 (2018 Supp.). The Notes on Use provide:

"This instruction is for use when distinct incidents separated by time or space are alleged by the State in a single count of the charging document. In circumstances where the State could have proceeded under multiple counts but chose not to do so, this instruction must be used. This form of charge presents a problem because the defendant is entitled to a unanimous jury verdict as to which incident constituted the crime." PIK Crim. 4th 68.100 (2018 Supp.).

Here, the State did not allege distinct, separate incidents in the complaint. Rather, the State simply alleged in count one of the complaint that Romo

"did unlawfully and feloniously obtain or exert unauthorized control over property or services worth at least $1,500.00 but less than $25,000.00, to-wit: 2004 Gold Pontiac Grand Prix; with the intent to permanently deprive the owner, to-wit: Michaela Lopez; of the possession, use or benefit of such property or services."

And at trial, the State did not present argument for or evidence of distinct or separate acts that could have supported the charged crime of felony theft. Rather, the State's arguments and evidence focused on Romo's act of driving Lopez' car away from the shop and failing to return the car to her. The district court's stated reason for issuing instructions 14 and 15—the presence of a lesser included offense—does not support the giving of a multiple acts instruction. The only difference in the elements of felony and misdemeanor theft is the value of the stolen property; the crimes do not involve any different acts by the defendant. See K.S.A. 2018 Supp. 21-5801(b)(3), (b)(4). Because there was no evidence of multiple acts in this case, the district court erred in issuing instruction No. 15. See *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014) (defining "multiple acts" as legally and factually separate incidents that independently satisfy elements of charged offense).

b. *Prejudice*

Given the district court's error in instructing the jury, we must determine whether the error was clearly erroneous and therefore reversible. To establish a clearly erroneous instruction error, the defendant must firmly convince the court that the jury would have reached a different result without the error. *Brown*, 306 Kan. at 1164. Romo claims the jury would have reached a different verdict without the instructions because they essentially informed the jury that he could be guilty of more than one crime or guilty of multiple thefts.

When determining whether there was clear error, appellate courts consider jury instructions "'as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.'" *State v. Butler*, 307 Kan. 831, 843, 416 P.3d 116 (2018). Romo fails to firmly convince us that the jury would have reached a different verdict without instructions 14 and 15. Although the instructions referenced multiple charges and multiple actions that could constitute a crime, the State presented no argument or evidence regarding any additional crimes or actions that could constitute a crime beyond Romo's single action of taking Lopez' car and failing to return it. The only "additional" crime before the jury was misdemeanor theft. And the jury was specifically informed that it could only consider the crime of misdemeanor theft if it did not agree that Romo was guilty beyond a reasonable doubt of felony theft. As discussed, the evidence was sufficient to support the jury's finding that Romo was guilty of felony theft.

When considering the jury instructions as a whole, coupled with the evidence presented at trial, Romo fails to firmly convince us that the result of the trial would have been different had the instructional error not occurred. Accordingly, Romo is not entitled to relief on this basis.

3. *Prosecutorial error*

Romo asserts the prosecutor made comments during his opening statement and closing argument that constituted prosecutorial error. Specifically, Romo claims the prosecutor improperly commented on witness credibility, invaded the province of the jury, and misstated the law.

Although Romo did not contemporaneously object to these comments, this issue is still properly before this court. See *State v. Tahah*, 302 Kan. 783, 787, 358 P.3d 819 (2015) (prosecutorial error based on comments during closing argument reviewable absent contemporaneous objection). We use a two-step process to evaluate claims of prosecutorial error. We first examine the record for error. If we find that there was error, we then must determine whether the error was prejudicial to the defendant. *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 6, 7, 8, 378 P.3d 1060 (2016). Under the first step, we analyze whether the prosecutor's comments fell outside the wide latitude allowed to prosecutors when discussing the evidence. Under the second step, we focus on whether the error prejudiced the defendant's right to a fair trial using the traditional constitutional harmless error inquiry. An error is harmless if the State can demonstrate beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict. 305 Kan. at 109.

a. *Error*

Romo identifies three comments as prosecutorial error. First, during the prosecutor's opening statement, he said, "[The] State has no fancy CSI slides. All we have is witnesses, which we believe are believe—are credible, believable witnesses, and we expect that you will feel likewise."

11

It is well established in Kansas that a prosecutor cannot state a personal opinion on the credibility of a witness. *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015); *State v. Pabst*, 268 Kan. 501, 506, 996 P.2d 321 (2000). The purpose of not allowing a prosecutor to comment on the credibility of a witness is that "*expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony, not commentary on the evidence of the case*." 268 Kan. at 510. The ultimate conclusion as to any witness' veracity rests solely with the jury. 268 Kan. at 507. Here, the prosecutor's comment on witness credibility constituted error. The State concedes that this comment was improper.

Second, Romo claims the prosecutor improperly invaded the province of the jury when, during closing argument, the prosecutor stated, "[O]n October 24th of 2017, Michaela Lopez took her car to Romo's Auto here in Liberal in Seward County hoping to have that car repaired. . . . Not only was her car not repaired, but it was in fact stolen from her." Romo argues the prosecutor's comment that Lopez' car was stolen invaded the province of the jury by stating a legal conclusion that should have been left for the jury to decide.

But the fundamental purpose of a prosecutor's closing argument is to attempt to link the evidence presented to the elements that the State must prove to support a conviction. See *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). As such, it is within the proper scope of the prosecutor's closing argument to conclude that the evidence presented supported a conviction on the charged crime. The fact that Romo argued for the jury to reach the opposite conclusion—that Lopez' car was not stolen—does not make the prosecutor's comment improper. The prosecutor's comment did not constitute error.

Third, Romo challenges a statement made during the rebuttal portion of the State's closing argument. In response to defense counsel's argument that the State had failed to meet its burden to prove the elements of theft because Lopez' car was not damaged, the

12

prosecutor said: "As to whether the vehicle was returned damaged, that is completely irrelevant. It also does not make it not theft if you didn't also vandalize the thing. These are completely separate concepts." Romo argues that the prosecutor's comment about damage to the car misstated the law because whether a car is damaged may be considered in determining a defendant's intent to permanently deprive an owner of his or her property. Romo contends that the lack of damage to Lopez' car was relevant to his defense that he did not have the intent to permanently deprive Lopez of her car.

It is improper for the prosecutor to misstate the law or the evidence to the jury. *State v. Hall*, 292 Kan. 841, 846, 257 P.3d 272 (2011). Contrary to Romo's assertion, however, the prosecutor did not misstate the law. While damage to a car may be a factor used to support an inference of intent to permanently deprive, Romo provides no support for his claim that the inverse is true—that a lack of damage to a car indicates a lack of intent to permanently deprive. See *Mitchell*, 262 Kan. at 439 (holding that damage to stolen vehicles supported inference of intent to permanently deprive). The prosecutor correctly stated the law by informing the jury that evidence regarding the lack of damage to Lopez' car was irrelevant in determining whether he had committed the crime of theft. Indeed, damage is not an element of theft. See K.S.A. 2018 Supp. 21-5801. And the prosecutor's comments must be viewed in context with the entire closing arguments rather than in isolation. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010). As noted above, the prosecutor made the comment about the lack of damage to Lopez' car in response to arguments made by defense counsel. The prosecutor's comment did not constitute error.

b. *Prejudice*

With regard to prejudice, we must determine whether the prosecutor's error in commenting on witness credibility was harmless. An error is harmless if the State can demonstrate beyond a reasonable doubt that it did not affect the outcome of the trial, i.e.,

there is no reasonable possibility the error affected the jury's verdict. *Sherman*, 305 Kan. at 109. Here, the State asserts the error was harmless given the brief nature of the comment and the curative effect of the district court's instructions to the jury.

After considering the entire record, we conclude the State successfully has demonstrated beyond a reasonable doubt that the erroneous comment by the prosecutor did not affect the outcome of the trial, i.e., there is no reasonable possibility the error affected the jury's verdict. As the State notes, the comment was brief and isolated. Moreover, the district court instructed the jury both before opening statements and again following the close of evidence that its verdict must be founded entirely upon the evidence admitted and the law as given in the jury instructions. The court specifically instructed the jury: "It is for you to determine the weight and credit to be given the testimony of each witness." In addition, the district court instructed the jury that the arguments made by counsel were not evidence but were simply intended to help the jurors understand the evidence and apply the law. The court also instructed the jurors that if they found any arguments of counsel not to be supported by the evidence, they should disregard those statements. We presume that jurors follow the district court's instructions. *State v. Peppers*, 294 Kan. 377, 392, 276 P.3d 148 (2012).

4. *Cumulative error*

Finally, Romo argues that the cumulative effect of the alleged errors deprived him of his constitutional right to a fair trial. Appellate courts will weigh the collective impact of trial errors and may grant relief if the overall result of the imperfections deprives the defendant of a fair trial even when the errors considered individually could be considered harmless. We look at the entire trial record to assess the aggregate effect of multiple trial errors. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014).

There is no basis for granting relief to Romo based on cumulative error. To the extent that the district court erred in instructing the jury, we already have found the error to have been harmless. Likewise, the prosecutor's comment on witness credibility during opening statement resulted in no actual prejudice to Romo. The other points he has raised on appeal do not amount to error at all. The combined effect of any errors was, at most, negligible and did not compromise Romo's right to a fair trial. See *State v. Cruz*, 297 Kan. 1048, 1075, 307 P.3d 199 (2013) ("As we have recognized for decades, '[a] defendant is entitled to a *fair* trial but not a perfect one.'").

Affirmed.